IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUÍS HERNÁNDEZ-GUZMAN

Plaintiff

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Defendant

CIVIL NO.:   08-2240 (ADC/MEL)

**OPINION AND ORDER**

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was born on November 2, 1948, and obtained his GED in 1972. (Tr. 56, 90.) From 1969 to 2000, he worked as an engineer driver for a steel company. (Tr. 70.) The job required him to walk for one hour, stand for one hour, and sit for six hours each day, (Tr. 70.) or to walk for four hours and sit for four hours each day. (Tr. 87- 88.) The job also required technical skills and knowledge, but did not require heavy lifting. (Tr. 70, 87- 88.)

Plaintiff began having lower back pain in 1987. (Tr. 124, 163.) Two surgeries in the early 1990s and medication did not remedy the problem.[1] Due to lower back and shoulder pain, plaintiff has not worked since December 31, 2000. (Tr. 69, 87, 124.) On February 13, 2004, Luís Hernández-Guzman ("plaintiff") filed for a period of disability and disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act., 42 U.S.C. §§ 416(I), 423, 1382. (Docket No. 5 ("Tr."), Tr. 56-58.) He alleges disability beginning January 1, 2001. (Tr. 21.)

---

[1] The record is unclear as to the dates of plaintiff's surgeries. Tr. 91 indicates that the surgeries took place in April 1992 and December 1993; Tr. 104 indicates that the surgeries took place in 1990 and 1993; Tr. 124 indicates that the surgeries took place in 1989 and 1994; Tr. 163 indicates that the surgeries took place in 1989 and 1993.

Plaintiff's application for Social Security Benefits was denied initially as well as on reconsideration. (Tr. 48-50, 51-53.) He timely filed a request for a hearing before an Administrative Law Judge ("ALJ"), and on January 18, 2008, the ALJ decided partially in favor of plaintiff, determining that plaintiff "has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on November 2, 2003." (Tr. 27, 47.) The Appeals Council denied plaintiff's request for review of the ALJ's decision on August 28, 2008; as a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("defendant"). (Tr. 5.)

On October 28, 2008, plaintiff filed this case pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 for review of the ALJ's decision. (Docket No. 1 at 1.) The complaint alleges that the ALJ's decision was not based on substantial evidence. (Docket No. 1 at 2.) On March 11, 2009, defendant answered the complaint, asserting that the Commissioner's findings of fact are supported by substantial evidence and are therefore conclusive. (Docket No. 6 at 2.)  With the answer, defendant filed the certified administrative record of the proceedings related to plaintiff's claims, including the evidence upon which the ALJ based his decision. (Docket No. 5.)

On March 13, 2009, the court referred this case to the undersigned for a report and recommendation, or for disposition were consent to be provided. (Docket No. 7.) Plaintiff consented to the Magistrate Judge's jurisdiction on April 6, 2009 (Docket No. 11.), and filed his memorandum of law on May 18, 2009. (Docket No. 14.) On July 20, 2009, defendant filed his memorandum of law. (Docket No. 17.)

The question before the court is whether there is substantial evidence in the record to support the Commissioner's decision that plaintiff was not disabled within the meaning of the Social Security Act before November 2, 2003.

2

II.   LEGAL ANALYSIS

Section 205(g) of the Social Security Act provides, *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2000).

"In Social Security cases, the Court must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López Vargas v. Comm'r of Soc. Sec., 518 F.Supp.2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401(1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3rd Cir. 1971), cert. denied, 402 U.S. 976 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). However, "[i]t is the

responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." <u>Irlanda-Ortíz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (citing <u>Rodríguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)). "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." <u>López Vargas</u>, 518 F.Supp.2d at 335 (citing <u>Richardson v. Perales</u>, 402 U.S. at 399; <u>Rodríguez</u>, 647 F.2d at 222). Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Rodríguez Pagán v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam) (citing <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981)).

Under the Social Security Act, a claimant of disability benefits bears the initial burden of proving that he or she is disabled within the meaning of the Social Security Act. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5, 146-47 (1987); <u>Reyes Robles v. Finch</u>, 409 F.2d 84, 86 (1st Cir. 1969). For purposes of the Social Security Act, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, Section 223(d) of the Social Security Act provides, in its pertinent part, that:

> (2)(A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the

4

national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. . . .

(3) . . . [A] "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. . . .

(5)(A) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. . . .

42 U.S.C. § 423. In determining whether a claimant is disabled, all of the evidence in the record will be considered. 20 C.F.R. § 404.1520(a)(3) (2008).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. §404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Bowen v. Yuckert, 482 U.S. at 140-42.

Through step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b). If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he/she has performed in the past. If the claimant is able to perform his/her previous work, . . . he/she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in

5

the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Sosa v. Comm'r of Soc. Sec., 550 F.Supp.2d 279, 284 (D.P.R. 2008).

"The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform." Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 390 (D.P.R. 2005) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991); Ortíz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989)).

### A.    The ALJ's findings.

On January 18, 2008 the ALJ issued a decision in which he determined that plaintiff was disabled within the meaning of the Social Security Act beginning on November 2, 2003, but that he was not disabled prior to that date. (Tr. 21.) After consideration of the evidence on record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2.    The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3.   The claimant has the following severe impairments: diabetes mellitus, atypical chest pain, non-obstructive right carotid disease, cervical pain and muscular spasms, cervical spondylosis, shoulders [sic] pain, lumbosacral syndrome, dissecation and degeneration of the L2-L3 though L4-L5 discs, status post-left sided L4-L5 laminectomies, early peripheral neuropathy, and venous insufficiency (20 CFR 404.1520(c)). . . .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5.       . . . [T]he claimant has a residual functional capacity to perform the full range of light work. . . .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565). . . .

7.      The claimant was 52 years old on the alleged onset date of disability. This is defined in the regulations as an individual closely approaching advanced age. On November 2, 2003, the claimant attained 55 years of age and his age category changed to an individual of advanced age (20 CFR 404.1563).

8.      Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Prior to November 2, 2003, transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. Beginning on November 2, 2003, the claimant has not been able to transfer any job skills to other occupations. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). . . .

10.     Prior to November 2, 2003, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566). . . .

11.     Beginning on November 2, 2003, the date the claimant's age category changed, considering his education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566). . . .

12.   The claimant was not disabled prior to November 2, 2003, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 23-27.)

**B.    The medical evidence contained in the record.**

The certified administrative record contains the following medical evidence concerning plaintiff's conditions:

(1) Dr. Mohammed M. Krad ("Dr. Krad") cared for plaintiff from November 10, 1993 until December 16, 2002. Claimant complained of episodes of severe lower back pain. On November 10, 1993, an M.R.I. of the cervical spine revealed:

> Large central and somewhat eleft lateral herniation of C6-C7 intervertebral disc with compression of the thecal sac and the corresponding left nerve root. Moderate herniation of the degenerated C6-C7 intervertebral disc with compression of the cervical cord and the corresponding left nerve root. Mild bulging of C3- C4 and C4-C5 intervertebral discs with minimal compression of the thecal sac. Decrease in multiple cervical disc heights with loss of their signal intensity.

(Tr. 119.) An x-ray interpretation of plaintiff's shoulders taken January 18, 2000 indicates that plaintiff exhibited arthritic changes of both acromioclavicular joints, but there was no evidence of recent fractures or dislocations. (Tr. 114.) An x-ray of the cervical spine revealed "[d]egenerative spurring of mid and lower cervical vertebrae with ossification of anterior longitudinal ligament opposite C5-C6 and C6-C7 spaces. No evidence of structural defects." (Tr. 113.)  Dr. Krad diagnosed claimant with back pain, herniated disc, and atypical chest pain, and prescribed medication. (Tr. 117.)

(2) On January 28, 2004, an M.R.I. of plaintiff's lumbar spine performed at Hospital San Carlos Borromeo in Moca, Puerto Rico revealed:

> 1. Well-known case of status post left sided L4-L5 Laminectomies

> 2. Ventral Anterolateral Extradural Defect at L40L5, extending into the left neural foramen. . . findings are again probably related to epidural scarring. However, the possibility of a recurrent disc protrusion cannot be entirely excluded in this enhanced MRI.

3. L2-L3 through L4-L5 discs dissecation [sic] and degeneration

4. L3 and L4 end plate irregularity . . .

(Tr. 120.)

(3) On May 17, 2004, Dr. Samuel Méndez ("Dr. Méndez") performed a diagnostic neurological examination of plaintiff. (Tr. 124-132.) Dr. Méndez diagnosed plaintiff with chronic lumbalgia and cervicalgia, S/P lumbar laminectomy, and lumbo sacral syndrome. (Tr. 126.) He described claimant's gait as antalgic with a rigid spine, but did not indicate the need for any assistive device. (Tr. 128.) Plaintiff's strength was 5/5 symmetrically in all extremities except for psoas strength, limited by pain to 4/5. (Tr. 125.) Scans of plaintiff's cervical spine revealed cervical spasm and cervical spondylosis with no fractures or dislocations, minimal spondylotic changes at C4, and unremarkable visualized faced joints and prevertebral soft tissues. (Tr. 127.) Dr. Méndez's report also relates that after back surgeries in 1989 and 1993 failed to benefit plaintiff, he quit working in 2000. Since that time, claimant reported suffering constant tenderness in the neck, shoulders, back and hips, symptoms exacerbated by light house duties, walking for more than ten minutes, and  remaining in the same position for more than thirty minutes. (Tr. 124.)

(4) On June 14, 2004, Dr. Eleuterio Loperena Jiménez ("Dr. Loperena") completed a cardio-vascular evaluation of plaintiff. According to the doctor, the claimant presented normal behavior, but was a "poor historian" and "not too reliable." (Tr. 133.) Plaintiff referred to daily, sharp, steady, severe lower back pain lasting for four years which improved with rest and worsened with performance of his household chores. (Tr. 134) Dr. Loperena diagnosed claimant

with diabetes mellitus, discogenic disease with surgery S/P, atypical chest pain, abdominal pain, and shoulder pain. (Tr. 138) Dr. Loperena gave claimant a prognosis of "poor," but noted no abnormalities in strength, posture, march or reflexes, and stated that plaintiff exhibited no disability with regard to sitting, standing, walking, carrying or handling objects, hearing, or speaking. (Tr. 137-39)

(5) Dr. Osvaldo Rivera ("Dr. Rivera"), a physician from the Disability Determination Service, a state agency, completed a physical residual functional capacity ("RFC") assessment for claimant on June 21, 2004. He concluded that claimant could lift or carry up to fifty pounds occasionally and up to twenty-five pounds frequently. Dr. Rivera's assessment also states that claimant can stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push and/or pull without limit. (Tr. 146.) Dr. Rivera reported that claimant could occasionally climb stairs, crouch, crawl, and stoop, and could frequently balance and kneel. (Tr. 147.)

(6) Dr. José A. Mora Delgado ("Dr. Mora"), who examined claimant from September 3, 2001 through November 8, 2004,[2] completed an RFC questionnaire in which he labeled claimant's prognosis as "poor." (Tr. 154, 159.) Dr. Mora identified several objective signs of plaintiff's medical condition, including reduced range of motion, positive straight leg test to thirty five degrees in both legs, tenderness, muscle spasm, muscle weakness, and sensory loss. The assessment describes plaintiff's pain as frequently severe enough to interfere with the attention and concentration needed to perform simple work tasks. (Tr. 155.) The reports states

---

[2]Dr. Mora indicates on November 8, 2004 that he examined plaintiff bimonthly, but the duration of bimonthly contact is not explicitly noted.

that plaintiff can walk for two hours and twenty minutes at one time, and that in an eight-hour workday, plaintiff can stand or walk for a about two hours and sit for about four hours. Claimant is reported to need to walk every twenty minutes for five minutes each time. (Tr. 156.) The report concludes that claimant can occasionally lift less than ten pounds in a competitive work situation, but never more than that. Dr. Mora also concluded that claimant can never twist, stoop, crouch, climb ladders, or climb stairs, and that he has significant limitations with reaching, handling, or fingering. (Tr. 157.) Emotional factors contributed to the severity of plaintiff's symptoms and functional limitations. (Tr. 155.)

(7) On March 31, 2005, Dr. Iris A. Acevedo-Marty ("Dr. Acevedo-Marty") conducted a neurological evaluation of the plaintiff, who was described as reliable and cooperative. (Tr. 163.) Dr. Acevedo-Marty found tenderness to palpitation on the whole spine, most prominently in the lower back area. (Tr. 164.) Claimant reported to Dr. Acevedo-Marty that his back pain was almost constant and that remaining in the same position for more than several minutes exacerbated symptoms. Plaintiff was unable to walk on his heels or toes or to do tandem gait, but he exhibited adequate alternating movements and finger to nose, showed no abnormalities in his head, neck, heart, lungs, or extremities, and was able to functionally walk, sit, and stand. (Tr. 164-65.) Dr. Acevedo-Marty reported a diagnostic impression of "chronic lower back pain, chronic cervical pain, status post laminectomy 1989, 1993, [and] early peripheral neuropathy most probably diabetic." (Tr. 165.) An x-ray of plaintiff's cervical spine demonstrated a loss of lordosis from C2 to C5, spondylotic changes at the C4-C5 and C5-C6 levels, and paraspinal spasm. The contemporaneous lumbosacral spine impression indicated spondylotic changes with

11

degenerative disk disease at the L4-L5 and L5-S1 levels. (Tr. 166.) Dr. Acevedo-Marty described claimant's gait as normal but slow. (Tr. 167, 172.)

(8) Dr. Gilberto Fragoso ("Dr. Fragoso"), a physician from the Disability Determination Service, a state agency, completed an RFC assessment of claimant on April 26, 2005. (Tr. 172-180.) He described claimant as having the exertional capability to occasionally lift or carry up to twenty pounds and frequently lift or carry up to ten pounds. The report states that the claimant can stand, walk, or sit with normal breaks for up to six hours in an eight-hour workday. (Tr. 174.) Dr. Fragoso reports that claimant can occasionally climb, stoop, crouch, and crawl, and can frequently balance and kneel. (Tr. 175.)

(9) Dr. Orlando Marini Roman examined the plaintiff on November 28 and 29, 2005. A cardiovascular study indicated non-obstructive right carotid disease and a fifty-five to sixty percent ejection fraction. (Tr. 182.) A venous study noted evidence of significant venous insufficiency in the right leg. (Tr. 183.)

(10) Claimant visited Dr. Carmelo Ceno Cardona ("Dr. Ceno") bimonthly from December 4, 2004 through May 18, 2007. Dr. Ceno diagnosed claimant with lumbarspine discongenic disease and L4- L5 laminectomy. He gave claimant a prognosis of "poor," identifying signs of tenderness, muscle spasm, muscle weakness, spastic gait, sensory changes, impaired sleep, reflex changes, swelling, and significant limitation of motion. Claimant complained to Dr. Ceno of severe pain in the lumbar spine radiating to both legs. (Tr. 187.) Dr. Ceno described claimant as suffering approximately three times per week from moderate headaches located in the cervical spine, which were also associated with vertigo, impaired sleep, and mood changes. (Tr. 188.) Dr. Ceno described claimant's pain as severe enough to frequently

interfere with his attention and concentration while performing simple work tasks. (Tr. 189.) The report states that the claimant has the ability to sit or stand for fifteen minutes at a time; that he can sit, stand or walk for a total of less than two hours in an eight-hour workday; that he must walk for five minutes at fifteen minute intervals; and that his job does not permit shifting positions at will from sitting, standing or walking (Tr. 189-190.) Dr. Ceno opined that the plaintiff was precluded from twisting, stooping, crouching, or climbing and that he could rarely look down, turn his head left or right, look up, or lift more than ten pounds in a competitive work situation. (Tr. 190.) Plaintiff also demonstrated significant limitations with the use of his hands, fingers, and arms. (Tr. 191.)

(11) In a medical opinion dated June 27, 2007, Dr. Roman Ruiz ("Dr. Ruiz"), a physician from the Disability Determination Service, a state agency, concluded that claimant could occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand or walk for about six hours in an eight-hour workday, and sit for a about six hours in an eight-hour workday. (Tr. 200, 206.) He also reported that claimant was not limited in his ability to push or pull; that he could frequently climb, balance, crawl, and kneel; and that he could occasionally stoop and crouch. (Tr. 200-01.) Dr. Ruiz's RFC assessment concluded that the claimant could perform light work with postural limitations. (Tr. 198.)

(12) The record shows plaintiff has taken the following medications at different times, principally to treat pain and depression: Bextra, Nexium, Glucovance, Dolorgesic, Floxin OTIC, Glucovance, Naproxen, penicillin, Prevacid, Vicodin, Xanex, Bextra, Propoxyphene, Glyburide, Skelaxin, Hydroxyzine HCL, Amitriptyline, and Neurontin. (Tr. 89-90, 117, 134, 163, 188.)

13

C.    The ALJ's application of the five-step process to the medical evidence.

The ALJ is required to complete a five-step sequential process in order to determine whether or not an individual qualifies to receive Social Security Disability Benefits. Sosa v. Comm'r of Soc. Sec., 550 F.Supp.2d at 284. In cases where this determination is appealed, it is the court's role to examine the record and determine whether there is substantial medical evidence that supports the conclusion reached by the ALJ. Rodríguez Pagán v. Sec'y of Health & Hum. Servs., 819 F.2d at 3.

In the case presently before the court, the ALJ determined that plaintiff satisfied the first step by proving that he "has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.)." (Tr. 23.) Plaintiff's showing of several severe medical impairments satisfied the requirements of the second step under 20 C.F.R. 404.1520(c)). (Tr. 23.) However, at step three, the ALJ determined that "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart, P, Appendix 1 (20 CFR 404.1520(d)." Thus, the ALJ's analysis proceeded to step four, where he determined that "claimant has the residual functional capacity to perform the full range of light work." (Tr. 24.) Because plaintiff's past relevant work required prolonged sitting and was a "medium job" according to vocational specialists, the ALJ concluded that "claimant is unable to perform any past relevant work (20 CFR 404.1565)." (Tr. 25.)

The fifth step in the sequential process requires the Commissioner to show that claimant "is able to perform other work in the national economy in view of [his] residual functional capacity, as well as [his] age, education, and work experience." Sosa v. Comm'r of Soc. Sec.,

550 F.Supp.2d at 284. If the Commissioner meets that burden, claimant is not disabled. Ortíz, 890 F.2d at 524. In the instant case, the ALJ applied the Medical Vocational Guidelines ("the Grid") corresponding to the plaintiff's age, education, experience, and the RFC finding in step four, resulting in a finding of "not disabled" prior to November 2, 2003 and "disabled" subsequent to that date. (Tr. 26.); see 20 C.F.R. subpt. P, app. 2, tbl.2, (applying Medical-Vocational Rules 202.06 and 202.14).

> **D.** **Plaintiff's objections to the ALJ's findings on the grounds that there is a lack of substantial medical evidence to support them.**

Plaintiff does not appear to challenge the ALJ's findings at steps one, two or three. However, plaintiff appears to challenge the ALJ's RFC determination at step four and the subsequent finding under step five that "[p]rior to November 2, 2003, . . . there were a significant number of jobs in the national economy that the claimant could have performed." (Tr. 26.) Thus, the court will first consider whether substantial evidence supported the ALJ's RFC determination and then whether the ALJ appropriately determined that the plaintiff could have performed a significant number of jobs in the national economy.

> **1.** **Plaintiff's objection to the ALJ's RFC determination.**

Plaintiff argues that the ALJ erred in assessing plaintiff's RFC by improperly relying on the opinions of the state agency physicians, Dr. Rivera, Dr. Ruiz, and Dr. Fragoso, who "failed to adequately explain how they reached their conclusion[s]." (Docket No. 14 at 24.) Plaintiff contends that the assessments were unfounded because the physicians did not note inconsistencies between their own assessments and other medical source conclusions which either were or were not provided to them. (Docket No. 14 at 25.) (see Tr. 151, 179, 205.)

The determination of RFC is an administrative decision that is the reserved for the ALJ. The ALJ is to "consider opinions from medical sources on issues such as . . . residual functional capacity . . . , [but] the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. 404.1527(e)(2). Pursuant to guidance provided by Social Security Ruling (SSR) 96-5p, the ALJ must consider the findings of state agency medical consultants as expert opinion evidence and address those opinions in the decision.

In the instant case, the three state agency consultants' RFC assessments did diverge from other medical evidence on the record. However, the fact that the consultants did not indicate that their findings were inconsistent with the conclusions of other medical sources despite the fact that prior assessments had been varied does not mean the consultants' conclusions were unfounded. Evidence in the record suggests that the consultants did review evidence of record, including objective medical evidence and examination notes from the consultative examinations. (Tr. 144, 146, 172, 197-98.)  Their reports can thus constitute substantial evidence. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (per curiam) (accepting the reports of two non-examining, non-testifying physicians as substantial evidence supporting the ALJ's RFC determination where 1) the reports mentioned claimant's impairments and stated corresponding medical conclusions and 2) the reports were consistent with each other).

The reports of the state examining physicians supported the ALJ's RFC determination. Dr. Rivera concluded that plaintiff could can lift or carry up to fifty pounds occasionally and up to twenty-five pounds frequently. (Tr. 146). Both Dr. Fragoso and Dr. Ruiz found that plaintiff could occasionally lift or carry up to twenty pounds and frequently lift or carry up to ten pounds.

(Tr. 174, 200.) Dr. Rivera, Dr. Fragoso, and Dr. Ruiz each concluded that plaintiff had few limitations with standing, walking, kneeling, balancing, or sitting; and plaintiff was occasionally able to clim, crouch, crawl, and stoop. (Tr. 146-47, 174-75, 200-01.) The ALJ properly cited the state agency consultants' opinions to support his RFC assessment that plaintiff was limited to light work.

Moreover, the ALJ's opinion explicitly considered the medical records provided by plaintiff's several treating physicians, as well as the assessments of the state agency consultants. Medical evidence submitted by Dr. Méndez, Dr. Acevedo-Marty, and Dr. Loperena also supports the ALJ's RFC assessment that the plaintiff was limited to light work. Apart from plaintiff's own complaints, nothing in the their reports indicates disabling restrictions. (Tr. 125, 137-39, 164-65.) Dr. Méndez concluded that plaintiff's strength was 5/5 in all extremities and was limited only to 4/5 in the psoas, while cervical spine scans revealed no fractures or dislocations and unremarkable facet joints. (Tr. 125, 127.) Dr. Acevedo found that plaintiff could functionally walk, sit, stand, and take off his shoes; that he had no limitation in hand function; and that strength in all extremities was 5/5. (Tr. 164-65.) Dr. Loperena noted no abnormalities in strength, posture, march, or reflexes or any difficulty with sitting, standing, walking, or carrying. (Tr. 137-39.)

Additionally, there is very limited medical evidence in the record dating from the time plaintiff claims disability until November 2, 2003, after which plaintiff was granted disability by the ALJ.[3] Since no contemporaneous evidence contradicts the ALJ's finding that plaintiff was

___

[3]The only evidence dating from the relevant time period is results of blood and treadmill tests performed on December 12, 2002. (Tr. 107-111.) Plaintiff was allegedly under the care of Dr. José A. Mora, an internist, from September 3, 2001 through November 8, 2004, but the earliest record from Dr. Mora dates to April 22, 2004 (though

restricted to light work during that time and subsequent evidence supports the ALJ's RFC assessment, that finding is supported by substantial evidence, and the court must consider the determination conclusive. Rodríguez Pagán, 819 F.2d at 3.

Having concluded that the ALJ relied on substantial evidence in the record to determine that plaintiff has the RFC to perform a full range of light work, the court now turns to the fifth step and the ALJ's application of the Medical Vocational Guidelines to prove the existence of other work that plaintiff could perform.

> **2.    Plaintiff's objection to the ALJ's use of the Medical Vocational Guidelines to show other available work.**

Plaintiff argues that the ALJ erred in failing to assess his pain as a significant non-exertional limitation, which would preclude reliance solely on the grid to determine occupational capacity. (Docket No. 14 at 8, 18-19, 22-23.); see Nguyen v. Chater, 172 F.3d at 35. Plaintiff contends that the ALJ improperly assessed the disabling frequency and intensity of his pain by relying on erroneous reports of the non-examining physicians from the Disability Determination Service. These reports were erroneous, plaintiff argues, for the reasons stated above: the physicians failed to note inconsistencies between their own assessments and other medical source conclusions, stating that the severity of the symptoms and the symptoms' effect on function was consistent with statements by claimant and others. (Docket No. 14 at 25) See (Tr. 150-151, 178-179, 204-205.); supra p. 16.

---

the date on the cover page indicates March 24, 2004). Dr. Mora does indicate that on the date of first examination, September 3, 2001, plaintiff had a history of lower back pain radiating to his lower extremities. (Tr. 159.). Nonetheless, he ALJ was entitled to draw inferences from this gap in the medical record. Irlanda-Ortíz, 955 F.2d at 769; see also Dumas v. Schwiker, 712 F.2d 1545, 1533 (2d Cir. 1983) (noting that the ALJ "is entitled to rely not only on what the record says, but also on what it does not say.") (citing Rutherford v. Schweiker, 685 F.2d 60, 63 (2d Cir. 1982); Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982)).

"Pain can constitute a significant non-exertional impairment which precludes naked application of the Grid and requires use of a vocational expert." Nguyen, 172 F.3d at 35 (citing Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (per curiam); Burgos Lopez v. Sec'y of Health & Human Servs., 747 F.2d 37, 41-42 (1st Cir. 1984); Gagnon v. Sec'y of Health & Human Servs., 666 F.2d 662, 664, 666 n. 8 (1st Cir. 1981)). However, use of the Grid remains appropriate where a claimant's non-exertional limitations do not significantly restrict the range of work permitted by his exertional limitations. Ortíz, 890 at 524. Thus, this court must affirm the ALJ's use of the Grid to find no disability prior to November 2, 2003 if substantial evidence supports his finding that plaintiff's pain did not significantly restrict the range of work available to plaintiff given his capacity to perform light work.

The ALJ's determination that plaintiff's pain and was "not of such disabling intensity as to prevent him from performing . . . light work activity" is supported by substantial evidence in the record. (Tr. 25.) In reaching this conclusion, the ALJ properly considered plaintiff's complaints of disabling pain and the extent to which pain of that intensity could "reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. (Tr. 24-25); see 20 C.F.R. 404.1529(a). The ALJ determined that plaintiff had proven medical impairments that could reasonably be expected to produce pain and discomfort, but that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 25.)

Once the existence of a medical impairment had been established, it was within the ALJ's authority to make a credibility finding regarding plaintiff's complaints about pain and to

19

draw inferences from the evidence in the record. See SSR 96-7p at 1-2; Irlanda-Ortíz, 955 F.2d at 769. In making his credibility assessment, the ALJ properly considered the following factors:

> (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at 3; (Tr. 25). Consideration of these factors with regard to evidence in the record provides adequate support for the ALJ's credibility finding.

The same evidence cited in support of the ALJ's RFC determination serves to support his credibility determination and conclusion that plaintiff's pain was not intense enough to prevent him from performing the full range of light work. See supra pp. 16-18. Additionally, the record reveals no contemporaneous indication whatsoever of plaintiff's pain during the contested time period, from January 1, 2001 until November, 2003. The ALJ was permitted to draw credibility inferences from this gap in the medical record. Irlanda-Ortíz, 955 F.2d at 769; see supra note 3.

While the ALJ provided only a sparse explanation of his adverse credibility finding, he did cite specific record evidence supporting that determination: the assessments of the physicians from the state agency supported the conclusion that plaintiff could perform a full range of light work, while plaintiff's statements suggested greater disability. (Tr. 25.); see Da Rosa v. Sec'y of Health & Hum. Servs., 803 F.2d 24, 26 (1st Cir. 1986); Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 29 (1st Cir. 1986;) SSR 96-7p at 5. Further, because the ALJ explicitly discussed

the medical evidence supporting plaintiff's complaints of disabling pain, this court cannot find that relevant evidence was ignored. (Tr. 23.); see Nguyen, 172 F.3d at 35.

In view that substantial evidence supports the ALJ's determinations that plaintiff could perform light work and that plaintiff's pain did not significantly limit the range of work available to him, use of the Grid to find no disability prior to November 2003 was appropriate.

**III.  CONCLUSION**

For the reasons explained above, it is hereby concluded that the ALJ's decision is supported by substantial evidence in the record. Therefore, the decision of the Social Security Commissioner is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of October 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE